## Case No. 9,070.

The MARGARET v. The CONNESTOGA.

[2 Wall. Jr. 116.] [1]

Circuit Court, E. D. Pennsylvania. Nov. 3, 1851.

PRACTICE IN ADMIRALTY—COSTS ON APPEAL—NEW EVIDENCE—COUNSEL FEES.

1. On an appeal from the district court in admiralty where the decree of that court is reversed here, the successful party has costs on the appeal, unless new evidence was introduced above, which might have caused a different judgment, if it had been offered to the court below.

2. Although, perhaps, in aggravated cases of appeal, where the judgment of the district court in admiralty is affirmed, the court might add by way of taxable costs a sum for counsel fees, in this court, yet such an allowance is not favoured. Involving the exercise of discretionary power, it is a dangerous jurisdiction and one disliked. And in the present case, although this court had decided that the libellee was to blame, yet it refused an application to make him pay fees to the libellant's counsel.

[Cited in The Baltimore, 8 Wall. (75 U. S.) 392.]

A collision had taken place in the dark between a schooner and a steamboat, in which the schooner was sunk and lost. The testimony was in conflict throughout; the hands on the schooner swearing that the accident was caused by the fault of the steamboat: and those on the steamboat swearing it was

owing to the fault of the schooner. The testimony in favour of the steamboat being, as he thought, rather the stronger, the district judge, on a libel by the schooner, decided in favour of the steamboat. [Case No. 8,622.] The schooner paid all the costs ($154) incident to the judgment of the court below against her, and brought the case by appeal here, where, being well prepared, it was twice argued on the facts, and quite ably argued by Mr. Waln and R. R. Smith for the schooner, and R. P. Kane and H. Wharton for the steamboat. This court examined the testimony with more than usual attention and not believing all the steamboat's part of it, and declaring its conviction "that it is necessary to the safety of sailing vessels that steamboats be held to a rigorous rule of accountability," and that these latter "are always considered as having the wind free, and must always give way," and "must shew it," reversed the decree below for error in judgment on fact, and referred it to the clerk to assess the damages. [Case No. 8,622a.] The clerk, among other charges which he reported the steamboat bound to pay, reported, not only the $154 paid by the schooner in the district court, on the judgment against her, and a bill of costs ($60) now first filed, as if she had been originally successful and had judgment in her favour below, but also her costs ($44) in this the circuit court on appeal: and, stating that the counsel for the schooner made an additional claim against the steamboat of $200 as counsel fees for defending the schooner, reported the amount as a fair charge, but left the allowance or disallowance of it for the court itself. The allowance of either of these costs on appeal or the fee, as matters to be paid by the steamboat, were now the points in issue.

Mr. Waln and R. R. Smith, for the schooner.

The costs of the appeal are like all other costs: and are to be paid by the party against whom judgment is finally given. It is no fault of the now successful party that the court below erred in its decree: and it would be unreasonable to charge him with costs incident to appeal from a judgment which he strove every way to avert, and which on the same facts as were presented below, is now decided to have been erroneously given. He had as good a right to be heard on appeal as he had to libel the party at all. A recent rule of the supreme court of New York, varying a practice derived by it from the English house of lords, declares that in all cases of reversal of any judgment in this court, except for want of jurisdiction, costs shall be allowed the plaintiff in error or appellant, unless otherwise ordered. The practice independent of rule, is the same in Massachusetts, on all reversals for error in fact. Bullard v. Brackett, 2 Pick. 85. The reversal here was for error in fact.

On the subject of counsel fees the supreme

court has said as follows (The Appollon, 7 Wheat. [20 U. S.] 362, 379): "It is the common course of the admiralty to allow expenses of this nature, either in the shape of damages or as part of the costs. The practice is very familiar on the prize side of the court; it is not less the law of the court in instance cases, it resting in sound discretion to allow or refuse the claim;" and the court accordingly, in an instance case, regarded an allowance of $500, counsel fees, as one that was "unexceptionable." In Kentucky the principle is established that the plaintiff, in an action for mesne profits, is entitled to be re-imbursed in such amount as he has in good faith been compelled to pay for the restoration of the property which the defendant has wrongfully taken or withheld from him, and he may therefore recover any counsel fee which he has paid or bound himself to pay in respect to the ejectment, if such fee be not unreasonable. Doe v. Perkins, 8 B. Mon. 198, 200. The same rule prevails in like cases in New Jersey. Den v. Chubb, 1 Coxe [1 N. J. Law] 466. In the present case the court has decided that the steamboat alone was in fault. The owners of the schooner will lose, at any rate, their time, and will go unpaid for much trouble which they have had in prosecuting their case through two courts. They ought, at least, to be indemnified for all money actually paid in the suit. Stimson v. Railroads [Case No. 13,456], which rejected such allowances, and rightly, in patent and common law suits, admitted the distinction between such suits, and cases in admiralty.

R. P. Kane and H. Wharton, for the steamboat.

It is extremely hard to charge the defendant with costs incident to an error not of his, but of the court below. He is in no fault for that judgment. No statute gives costs in such cases, though statutes do in others; and the supreme court of Pennsylvania has held costs in cases of reversal to be so unjust that, where they had been levied by execution, it quashed the writ, and ordered the different officers to refund them. Wright v. Small, 5 Bin. 204; and see Smith v. Sharp, 5 Watts, 292. In an early leading case in New York (Le Guen v. Gouverneur, 1 Johns. Cas. 436, 523), an appeal from chancery, Mr. Justice Benson, after looking into all the cases, delivered the unanimous opinion of the court of errors, "that if judgment be given in the court below against the plaintiff, and he bring error, and the judgment in the court below be reversed, he recovers only the costs of the action below, because the court of errors gives such judgment as the court below ought to have given, and none other; and it would be unreasonable to compel a person, in case of a reversal, to pay costs for the error of the court below. The cases," he says, "are express and decisive."

1 Strange, 617; 1 Anstr. 180, 183; 1 Salk. 262. In 1829, this case was solemnly confirmed in a chancery suit, and declared to be in accordance with the practice of the house of lords in England. Murray v. Blatchford, 2 Wend. 221, 224. In Massachusetts, and in Maine, the plaintiff in error is refused costs on reversal for error in law, though there is a statute in both states, which declares that "in all actions the party preventing shall be entitled to his legal costs." Marble v. Snow, 14 Me. 196. Mr. Beames, in his treatise on Equity Costs (page 246), says: "It seems a general rule, that costs are not given where the decision of the tribunal appealed from is reversed, 'and that very reasonably, for why should any man, in case of a reversal, pay costs for the error of the court below?'"

On the matter of the counsel fees: Although the judgment in The Appollon is that of the court, the language quoted is in its opinion as given by Judge Story, who, in his circuit, went so far as to include counsel fees as damages in a suit on the law side of the court His doctrine, full before the eyes of this circuit, has been pointedly rejected by it, and is at variance with the tone of some of the best courts in the Union; those of Massachusetts, New York (see Stimpson v. Railroads [supra], and cases cited in the court's opinion), and Pennsylvania (Good v. Mylin, 8 Pa. St. 51). "The principle founded on it," says Chief Justice Gibson, "would be without bound or limit, both in the generality of its application, and the extent of its operation. A defendant sued on a plain bond, might find himself soused in damages, not only for the detention of the debt, but for the amount of a surgeon's bill for curing the plaintiff's leg, broken in a fall from his horse while travelling to court, in order to prosecute his suit. Where would it stop? . . . . . No law suit is prosecuted without trouble or expense, and were compensation for these recoverable, as an original ground of action by anticipation, the claim would be a standing dish, and we should have a direct precedent for it in every trial. There is many a right which is not worth the trouble and expense of enforcing it . . . . . . and to pay for expenses and trouble in order to make it valuable, would make it the principal battle-ground." A reputable text writer (Conk. Adm. Prac. 780) refers to The Appollon as a cause involving questions of great importance, affecting the rights and sovereignty of foreign nations, and speaks with disapprobation of applying its principle to "other than such as are likely only very rarely to occur;" and says that doing so "would introduce a new element of controversy, and impose on the judge a disagreeable and embarrassing duty." He adds that in the Southern district of New York, extra counsel fees are not allowed except in extraordinary cases, and that no instance has occurred of such an allowance in the Northern. The allowance would have

no foundation in professional delicacy, good morals or policy. A fee in this court, at least, is honorary, and cannot be recovered. So it ought to remain; and the court will not lay down a rule which refers the counsel from his client to his client's enemy, and tends to tarnish the brightness of professional honour by allowing counsel to receive his pay not as a grateful recompense from a protected client, who knows and appreciates his service, but makes him extort it from the client of opposing counsel; a client who feels unkindly to him, and whom his own client, stimulated by success, is ready, to any extent, to assist in burdening with appressive and unjust charges. But The Appollon at furthest makes the allowance discretionary; and whatever may be the abstract principle, this case is not one for its application. The collision was in the dark. The evidence was in conflict throughout. The decision of this court rested on a disbelief of the facts positively sworn to by one side, and on a presumption that every collision between a schooner and steamboat is presumed by law to be the fault of the steamboat, till she shows that it was not her fault. This presumption, however necessary to be adopted, may often be false in fact. The court below, on the same evidence that the court had here, thought it repelled by the testimony. Certainly the case was one of doubt. It was ordered for re-argument on facts only and the court examined the evidence with a care more than a case not doubtful would require. It was a case on which two minds might naturally disagree; and which, under favour, comes to be decided as it is, only because one mind was in a court below, and the other in a court above.

GRIER, Circuit Justice. When the judgment of an inferior court is affirmed on error or appeal, it is of course, that the defendant in error has judgment for costs. But when the judgment of the court below is reversed on writ of error or appeal, costs are not of course. It is said that 'as the appellee is not in fault for the judgment below, he should not pay the costs on appeal; but each party should be left to pay his own costs. Formerly, as there were no damages given on a writ of error, there could be no costs either at common law or by statute of Gloucester. The statute of 3 Hen. VII., c. 10, first gave costs where a judgment was affirmed on a writ of error. That of 4 Anne, c. 16, § 25, gave costs where a writ of error was quashed, but no statute gave them in case of a reversal. In equity and in admiralty there seems to be no other rule than the discretion of the court, as to costs, on appeal. So far as any rule on the subject has been announced by this court, it is only, that we would not allow costs on appeal where new evidence has been introduced above, which might have caused a different judgment if it had been offered to the court

below. Carrigan v. The Charles Pitman [Case No. 2,444]. But I believe it has been our usual practice to give the party his costs here, who obtains the judgment of this court, with the above exception only. It is true the defendant is not in default for the judgment of the court below. And to this it may be answered, neither is the plaintiff.

The plaintiff who recovers a debt, or damages for an injury done to him, has a right to recover also the cost incurred in obtaining his judgment. The costs on appeal would seem to form a part of these, as justly as any other, unless in the excepted cases I have mentioned, where he failed below by not producing sufficient evidence, which was afterwards produced on appeal. In courts of law, at the present time, I believe in most instances, costs are given on reversal of a judgment. And I think also as a general rule, that where a plaintiff is forced to appeal in order to recover his debt or damages, and does not succeed in so doing, on his appeal he recovers all his costs up to the date of his decree or judgment, unless some special reason be shown to the contrary.

But while this rule applies to actual taxable costs I know of no instance where we have added a large sum for supposed counsel fees. I know that it was decided, in the case cited at the bar (The Appollon, 9 Wheat. [22 U. S.] 362), that courts of admiralty have a wide discretion to allow expenses of this nature, not only in prize, but in instance cases. The allowance is there said to rest in the sound discretion of the court. I must confess my decided repugnance to the exercise of discretionary power over men's property. This principle has been introduced from civil law courts. It partakes rather of the hall of the cadi, than of the judgment seat of the court. I have already refused to follow the practice of the late Judge Story in patent cases, and allow necessary counsel fees as part of actual damages. Stimpson v. The Railroads [Case No. 13,456]. "Sound discretion" is no doubt an excellent phrase in the abstract, but the exercise of it over men's property, liberty or life is sometimes called a tyrannical, not a judicial power. "Discretion" is admitted to be dangerous; but "sound discretion" is claimed as a different thing. Who is to judge of the soundness but the court? And by what is it to judge when it abandons precedent and principle? "Sound discretion" is discretion as settled by rules. Otherwise it is sound only when you decide as the party seeking the decision wants. And hence in practice it would come to mean the notion, whim or caprice of the judge who exercises it. In prize cases, the money is in court. Like plunder, it belongs to no one till it is divided, and it may be no more than right that some crumbs should fall to the share of the learned doctors and proctors who have the trouble of its distribu-

tion. I confess my decided aversion to the exercise of an arbitrary power over the property in the pockets or possession of parties in common cases. If I were to judge of the reward merited by the learned counsel on either side of this case, I should say that their labours on behalf of their respective clients, were worthy of ample remuneration. For the case was well prepared, and well argued on both sides; and I think it due to the younger gentlemen, who have for the first time made their appearance in this court (Mr. H. Wharton and Mr. R. P. Kane), to say, that they have defended the case of their clients, with a zeal and ability which deserved, if it did not obtain success, and which are certain omens of their future success and eminence in their honourable profession.

The defendants in this case have acted in good faith in making this defense; and, I have no doubt, consider themselves wronged by the judgment of this court. In all collision cases, both sides are sure they are not in fault, and they swear to it, believing it to be true. In deciding these cases, the testimony is always contradictory; much of it, though not intentionally false, is not true. The truth has to be guessed out by the court by a careful comparison of the admissions and contradictions of the witnesses. The last guess may not be the right one, but he in whose favour it is, may at least be said to have good fortune, if not justice on his side.

Now I will not say that there may not be aggravated cases of appeal when the judgment below is affirmed, that this court, in the exercise of this permitted but disliked exercise of discretion, may add, by way of penalty, to the taxable costs, a sum for counsel fees in this court. But where the defendants, as in this case, had the judgment of the district court in their favour, where there has been no attempt on their part to oppress the plaintiff by protracted litigation, we do not think that a case is presented, where this dangerous discretion of adding two hundred dollars to the damages should be exercised. If the plaintiffs have fortunately recovered in this doubtful contest, they must pay their counsel, as in common law cases, out of the damages recovered, and be thankful for the balance. But for the very able and valuable services of their counsel, they would not probably have recovered anything. It is true, that civil law tribunals by the exercise of this sound discretion, or summum jus propose to make the complainant whole for his entire loss; but this is not always possible, and we should be careful, lest the exercise of this discretion may be to the opposite party summa injuria.

The report of the clerk is therefore confirmed, without the addition of the two hundred dollars demanded as counsel fees.